DISTRICT COURT OF GUAM

TERRITORY OF GUAM

RICHARD A. SHARROCK and
CHRISTINA M. SHARROCK,

      Plaintiffs,

    vs.

UNITED STATES OF AMERICA,

      Defendant.

Civil Case No. 08-00013

ORDER AND OPINION RE:
DEFENDANT'S MOTION TO DISMISS

     This matter came before the court on March 22, 2010, on the Defendant's Motion to
Dismiss (*see* Docket No. 30) and Plaintiffs' Motion for Partial Summary Judgment (*see* Docket
No. 42).[1]   Having considered the parties' arguments and submissions, as well as relevant
caselaw and authority, the court hereby **GRANTS** the Defendant's motion and issues the
following decision.

## I. FACTUAL BACKGROUND

     The facts are simple and not in dispute.  On October 5, 2005, Plaintiff, Mr. Richard
Sharrock ("Mr. Sharrock") was driving on the Naval Base on Route 1, Marine Corps Drive,
Guam.  *See* Docket No.1, Compl., at ¶ 14.  On that same day, Petty Officer Quinten M. McCoy

---

[1] As discussed further herein, the court treats the Defendant's Motion to Dismiss as one for
Summary Judgment.  In turn, the Plaintiffs' arguments in their Motion for Partial Summary
Judgment are considered in opposition to that motion.  The sole issue for consideration in either
motion is whether the tortfeasor, Petty Officer Quinten M. McCoy, was acting within the "course
and scope of employment" when he was traveling to basketball practice held at the Navy gym on
base.

("Petty Officer McCoy"), then a member of the Navy as a Gunner's Mate on the USS Frank Cable, was driving on that same road but in the opposite direction to Mr. Sharrock. *Id.,* ¶ 15. Petty Officer McCoy crossed over from his lane of travel into Mr. Sharrock's lane of travel, colliding head-on with the Plaintiff's vehicle, injuring Mr. Sharrock. *Id.,* ¶ 16. It is undisputed that Petty Officer McCoy was at fault. *See* Docket No. 33, Exh. D, Accident Report.

On the day of the accident, Petty Officer McCoy's work day had finished early. Petty Officer McCoy's superior, Chief Officer Douglas McNeel had let the persons in his division leave work around the lunch hour. *See* Docket No. 33, Exh. C, Deposition of Douglas McNeel ("McNeel Depo.") p. 74:1-6. Petty Officer McCoy was considered to be on liberty– off duty. *Id.*, p. 78:14-79:2. He was free to do whatever he wanted to in the afternoon. *Id.*, p. 79:3-6.

The accident occurred when Petty Officer McCoy was on his way to basketball practice. *See* Docket No. 30, Exh. 1, Examination of Quinten M. McCoy ("McCoy Exam."), p. 3:24-4:1; Docket No. 33. While driving to the base gym, Petty Officer McCoy opened the middle console in his car and money fell out which began blowing around in the car. *See* Docket No. 33, Exh. D, Accident Report. He became distracted and momentarily drifted into an oncoming lane causing an accidental collision with the Plaintiff. *Id*. The accident was not related in any way to Petty Officer McCoy's duties or responsibilities as a Gunner's Mate in the U.S. Navy. *See* Docket No. 30, Exh. 2, Supervisor's Certification that Defendant was not Within Scope of Work.

Petty Officer McCoy played basketball in a league sponsored by the Navy's Morale, Welfare & Recreation ("MWR") Program. *See* Docket No. 30, Exh.1, McCoy Exam.*,* p. 4:4-7, Docket No. 33, Exh. A., Deposition of Harry Daniel Barnthouse ("Barnthouse Depo."), pp. 51:17-52:3 . The MWR Program is a mandatory Navy program, as required under Navy Regulations, more specifically BUPERSINST 1710.11c dated 25 July 2001. *See* Docket No. 33, Exh. B. Under that regulation, the mission and objectives of the program are as follows:

> 202. <u>Mission of the Local MWR Program</u>. The mission of the local MWR program is to provide quality, varied programs of wholesome and constructive recreation and social activities for Navy personnel and their family members. Effective MWR programs contribute to the mental, physical, social, and

educational enrichment of all participants.  The accomplishment of this mission directly contributes to the readiness of the Navy activities/units and personal readiness and retention of the Navy personnel.

203.  <u>Program Objectives</u>. . . .[A]dequate MWR programs are essential to the effective functioning of the Navy.  Cognizant commanders and commanding officers must devote necessary attention and authorized resources to ensure effective and adequate MWR programs are available.  It is Navy policy to fund a well-rounded MWR program to:

       a.  Provide leisure opportunities that contribute to the readiness, retention, social, physical, educational, cultural, unit and community cohesion and esprit de corps,  . . .

       b.  Maintain among Navy personnel a high level of job proficiency, military effectiveness, and educational attainment.

       c.  Promote and maintain the mental and physical well-being of Navy personnel and their family members.

       d.  Encourage Navy personnel to use their leisure time constructively by participating in programs that help to develop and maintain motivation, talent, and skills that contribute to their ability to perform duties as service members and as responsible citizens.

       e.  Aid in the recruitment and retention by making Navy service an attractive career opportunity.

       f.  Assist Navy members to adjust from civilian life to a military environment upon entry into the military service.

       g.  Assist in providing a community support environment to family members of Navy active duty personnel, particularly in the absence of military sponsors while at sea, on unaccompanied tours, or involved in armed conflict.

*See* Docket No. 33, Exh. B.

MWR provides a wide assortment of recreational hobbies and activities for service members and families.  For example, in addition to sports activities (*e.g.* basketball, softball, bowling), the MWR offers reading, watching television, shooting pool, playing foosball, playing cards, guitar lessons, scrapbooking, video gaming activities, concerts, outings to go out to dinner– all of which are provided and encouraged  . . .  and all of which were available for a sailor to engage in (or not engage in) during his time off work. *See* Docket 33, Exh. A, Barnthouse Depo, p. 74:2-22; Docket No. 41, Exh. B, McNeel Depo., p. 10:9-20. The MWR Program is intended to provide the service members with something to do other than drink.  *See*

Docket No. 30, Exh. 1, McCoy Exam, p. 5:5-18.  Participation in the MWR Program is on a voluntary basis.  Docket No. 33, Exh. C, McNeel Depo., p. 49:9-13.

Petty Officer McCoy was a sailor 24 hours a day, as such he was "on call" seven days a week, 365 days in the year.  *See* Docket No. 33, Exh. C, McNeel Depo., p.19:13-16.  He was subject to the Uniform Code of Military Justice, the criminal law by which soldiers and sailors are governed by, at all times.  *Id.,* p.47:8-12.  Part of his duties as a sailor was to keep himself physically fit.  *Id.*, p. 31:21-24.

The Navy has a physical fitness test that sailors must pass or risk being kicked out.  It consists of running 1.5 miles in a set time, doing a required number of push ups and doing a required number of sit ups.  *See* Docket No. 33, McNeel Depo, p. 32:16-33:25.  The Navy also has a weight control program under which the sailor must not exceed a certain weight, depending on his height.  *Id.*, p. 34:5-10.  A sailor is weighed twice a year, and if he is not within the standards, he can get kicked out of the Navy.  *Id.,* p. 34:18-25.

It is apparent from the foregoing recital that the Plaintiffs' injuries were caused by the negligent or wrongful act of Petty Officer McCoy, who was an employee of the Defendant United States.  It is also clear that the vehicle, which Petty Officer McCoy was driving, was the personal property of the officer's, and that he was using it while off duty to attend basketball practice at the Navy base gym.

The only question for consideration, therefore, so far as liability of the Defendant is concerned, is whether Petty Officer McCoy was acting within the scope of his employment.

## II. Jurisdiction and Venue

The Plaintiffs' causes of action arise under the Federal Tort Claims Act.  *See* 28 U.S.C. § 2671 *et. seq.* and 28 U.S.C. § 1346(b).  The Federal Tort Claims Act ("FTCA") "waives [the United States'] sovereign immunity . . . in a defined category of cases involving negligence committed by federal employees in the course of their employment." *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006) (quotation marks omitted).  Plaintiffs allege that Petty Officer McCoy, a member of the United

States Navy, negligently caused a head-on collision. They further allege that McCoy was acting within the course and scope of his employment with the Government at the time of the accident.[2] If a federal employee is acting within the scope of his employment, there is subject matter jurisdiction under the FTCA. *See Clamor v. United States*, 240 F.3d 1215 (9th Cir. 2001).

Venue is proper in this judicial district, the District of Guam, because Plaintiffs reside here, and because all of the events or omissions giving rise to Plaintiffs' claims occurred here. *See* 28 U.S.C. § 1391.

### III. APPLICABLE STANDARD FOR MOTION TO DISMISS

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction[3]; thus, the court presumes a lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations in plaintiff's complaint as true. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). For a factual attack, in contrast, the court may consider extrinsic evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Further, the court does not have to assume the truthfulness of the allegations, and may resolve any factual disputes. *See White*, 227 F.3d at 1242. Thus, "[o]nce the moving party has converted the motion

---

[2] The court understands that the Plaintiffs have sued Petty Officer McCoy and his insurance company in the Superior Court of Guam, *Sharrock v. McCoy*, CV 1131-07. *See* Docket No. 30, p. 2.

[3] Sources of federal subject matter jurisdiction are federal question jurisdiction, 28 U.S.C. § 1331, diversity jurisdiction, 28 U.S.C § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367.

to dismiss into a factual motion by presenting affidavits or evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

The Government filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Government's motion is a factual attack on this court's subject matter jurisdiction. Where the jurisdictional issue and the merits of the case are not completely intermeshed or intertwined factually, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, including resolving factual disputes when necessary. *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

However, where the jurisdictional and substantive issues are intertwined, a motion to dismiss for lack of subject matter jurisdiction is to be treated as a motion for summary judgment. *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) ("Because the jurisdictional issue [when a plaintiff's cause of action accrued for purposes of the FTCA] is dependent upon resolution of factual issues going to the merits, it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motions."). Here is such a case. In order to establish subject matter jurisdiction, a Federal Tort Claims plaintiff bears the burden of establishing, *inter alia*, that the Government employee was acting within the scope of his or her employment at the time of the accident. 28 U.S.C. § 1346(b). The scope-of-employment issue is thus, on its face, a jurisdictional one – if Petty Officer McCoy was acting outside the scope of his employment with the Government, the district court lacks jurisdiction over the Plaintiffs' claims.

Meanwhile, the underlying cause of action in a FTCA claim is derived from the applicable state law. In Guam, an employer is liable for the tortious acts of its employee under the doctrine of respondeat superior, but only if the employee's negligent acts were committed within the scope of employment. *See Fajardo v. Liberty House Guam*, 2000 Guam 4 ¶7. Thus,

the scope-of-employment issue is also an element of the Plaintiffs' FTCA claim – if Petty Officer McCoy was acting outside the scope of his employment with the U.S. Navy, the Plaintiffs cannot satisfy an element of their negligence claim against the United States.

Since it seems clear that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the Rule 56 summary judgment standard (essentially a 12(b)(6) motion to dismiss converted to a motion for summary judgment because of the reliance of extrinsic evidence) applies and it is the Government's burden to establish there are no material facts in dispute and that it is entitled to prevail as a matter of law.[4] *City of Moses Lake v. United States*, 451 F. Supp.2d 1233, 1241 (E.D. Wash. 2005); *see also Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) (When the jurisdictional issue is completely intermeshed or intertwined with the merits of the case, the district court "should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. . . [Unless this standard is met], the intertwined jurisdictional facts must be resolved at trial by the trier of fact.") (citation omitted).

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Under Fed.R.Civ.P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Id.* at 248.

The moving party has the initial burden to prove that no genuine issue of material fact

---

[4] In a FTCA case, the court is the "trier of fact" with regard to the merits of the FTCA claim. 28 U.S.C. § 2402. Section 2402 states that [s]ubject to chapter 179 of this title, any action against the United States under section 1346 shall be tried by the court without a jury . . . ." The action in this case concerns section 1346(b).

exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23. "Generally, the issue of scope of employment is a question of fact, but becomes a question of law when the facts are undisputed and no conflicting inferences are possible." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995).[5]

## IV. ANALYSIS

The FTCA provides that the United States is liable for personal injuries by the negligence or wrongful acts of government employees who are acting within the scope of their office or employment at the time of the alleged tortuous act. 28 U.S.C. § 1346(b). Under the FTCA, the Government is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

For military personnel, the phrase "scope of . . . employment" is equated with "acting in [the] line of duty," *see* 28 U.S.C. § 2671, and "line of duty" is defined by the state law of respondeat superior. *Lutz v. Secretary of the Air Force*, 944 F.2d 1477, 1488 (9th Cir. 1991) ("The scope of employment inquiry, including, in the military context, whether the employee was 'acting in line of duty' is defined by the applicable state law of respondeat superior.")

---

[5] In their Motion for Partial Summary Judgment (*see* Docket No. 48) the Plaintiffs claim that the issue of whether the Defendant has respondeat superior liability is appropriate for summary judgment because there are no genuine issues of material fact. The court agrees, the facts are not in dispute.

1  (quoting *Washington v. United States*, 868 F.2d 332, 333-34 (9th Cir. 1989)).  Thus, because this

2  accident occurred in Guam, this court can only exercise jurisdiction over the Plaintiffs'

3  complaint if it finds, under Guam law, a private employer would have been liable for Petty

4  Officer McCoy's actions under the doctrine of respondeat superior.  *See* 28 U.S.C. § 1346(b)(1);

5  *Flechsig v. United States*, 991 F.2d 300, 302-03 (6th Cir. 1993) (holding that a district court has

6  no jurisdiction to hear matters brought under the FTCA if the employee was acting outside the

7  scope of employment).

8      In *Fajardo v. Liberty House Guam*, 2000 Guam 4, ¶7, the Guam Supreme Court set forth

9  the following standard for determining employer liability.

10         Under Guam statutory authority, a principal may be held liable to third
parties for the acts of its agents that causes injury to the third party.  Specifically
11 18 GCA § 20309 provides:

12         **§ 20309.  Principal's responsibility for negligence or omission.**
Principal's responsibility for negligence or omission.  Unless required by
13 or under the authority of law to employ that particular agent, a principal is
responsible to third persons for negligence of his agent in the transaction
14 of the business of the agency, including wrongful acts committed by such
agent in and as part of the transaction of such business, and for his willful
15 omission to fulfill the obligation of the principal.

16 19 GCA § 20309 (1992) (formerly Section 2238 of the Civil Code of Guam
(1970)).  This provision has been held to be in accord with the letter and spirit of
17 the common law doctrine of respondent superior and to govern cases involving
master and servant as well as principal and agent.  *See Concepcion v. United*
18 *States*, 374 F. Supp. 1391, 1395 (D. Guam 1974)(citing Guam Civ. Code § 2338
(1970).

19
    Guam adopted 19 GCA § 20309 from the California Civil Code Section 2338; these
20
provisions are identical.  For this reason, the court should look to California case law.  This is
21
because "[g]enerally, when a legislature adopts a statute which is identical or similar to one in
22
effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the
23
construction placed on the statute by the originating jurisdiction." *Sumitomo Constr., Co. v.*
24
*Zhong Ye, Inc*., 1997 Guam 8 ¶ 7 (citing Sutherland's Stat. Const. § 52.01 (5th Ed)).  Thus, "we
25
look to the substantial precedent developed within that state to assist in interpreting parallel
26
Guam provisions." *O'Mara v. Hechanova*, 2001 Guam 13 ¶8 n.1 (observing that where a Guam
27
provision is derived from California, California case law on this issue is persuasive when there is

28

no compelling reason to deviate from California's interpretation.") (*citing Fajardo*, 2000 Guam 4 ¶ 17).

California has established a two-prong test to determine whether an employee is acting within the scope of employment. "Generally, an employer will be liable for an employee's wrongful act if 1) the act was required or incident to the employee's duties *or* 2) the act was reasonably foreseeable to the employer." *Liu v. Republic of China*, 892 F.2d 1419, 1427 (9th Cir. 1989). The California Supreme Court stated:

> A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" ( Rodgers v. Kemper Constr. Co. (1975) 50 Cal.App.3d 608, 619, 124 Cal.Rptr. 143.) Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise.

*Perez v. Van Groningen & Sons, Inc.*, 227 Cal. Rptr. 106, 108-09 (1986).

An essential element of respondeat superior is a causal nexus or reasonable relationship between the duties of employment and the conduct causing injury. "[T]he incident leading to the injury must be an 'outgrowth' of the employment; the risk of tortious injury must be 'inherent in the working environment' or 'typical of or broadly incidental to the enterprise [the employer] has undertaken.'" *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 48 Cal. Rptr. 2d 510, 514 (1995) (citations and quotation marks omitted). "As a matter of policy it is considered fair to allocate to the costs of doing business a loss resulting from a risk that arises in the context of the employment enterprise." *Baptist v. Robinson*, 49 Cal. Rptr. 3d 153, 159 (2006). "The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." *Johnston v. Long*, 30 Cal.2d 54, 64 (1947).

> California courts have interpreted the respondeat superior doctrine broadly to hold employers vicariously liable for a wide range of their employees' tortious activities. Under California law, so long as an employee's tortious acts arise out of or concern the employment, they may fall within the scope of the employment.

1  *Gaytan v. United States*, No. C 05-4621 MHP, 2006 WL 408562 *5 (N.D. Cal. Feb. 17, 2006)

2  (unreported) (citations omitted).

3      Relying upon California law, this court has previously decided a case similar to the

4  present one.  In *Concepcion v. United States*, 374 F. Supp. 1391 (D.Guam 1974), a Petty Officer

5  in charge of the Special Services Division of the U.S. Navy got into an auto accident while on

6  Navy grounds.[6]  The Navy sailor, Petty Officer Michael L. Monroe ("Petty Officer Monroe"),

7  was driving a vehicle that was owned or leased by the U.S. Navy and which he believed was to

8  be used for business purposes only.  *Id.* at 1392.  At the time of the accident, Petty Officer

9  Monroe was off-duty but was subject to be called upon for additional duty should the need arise.

10  *Id.* at 1393.  The court noted that although the Petty Officer was subject to call, he was free to do

11  as he pleased.  *Id*. While off-duty and prior to the accident, Petty Officer Monroe stopped for a

12  beer and ran an errand.  *Id.*  Prior to the accident, a service member asked Petty Officer Monroe

13  for a ride to Naval Communications Station, Guam ("NCS").  *Id.*  Petty Officer Monroe drove

14  the service member to NCS because no duty driver was available to take him. *Id.*  He was not

15  compensated for the trip and the United States had no knowledge that Petty Officer Monroe at

16  the time used the vehicle for driving the service member to NCS.  *Id.* at 1394.

17      In *Concepcion*, the court noted that Section 2238 of the Civil Code of Guam (now

18  codified Title 19, Section 20309 of the Guam Code Annotated) was identical to Section 2238 of

19  Deering's Civil Code (Calif.).  *Id.* at 1395.  The court considered California cases for the

20  propositions that the state law on *respondeat superior* controls and an employer is only

21  responsible for an employee's negligence if the employee was performing for the employer.  *Id.*

22  Upon reviewing California law, the court held that Petty Officer Monroe drove the service

23

24      [6] *Concepcion v. United States*, 374 F. Supp. 13391 (D. Guam 1974), was criticized by the
Second Circuit in *Taber v. Maine*, 67 F.3d 1029 (2d Cir. 1995). However, *Taber* is distinguishable

25  because in *Taber*, the Second Circuit decision was based on an analysis of case law that focused on
the United States' liability for an intoxicated service member's negligence. In *Concepcion*, the Petty

26  Officer had one beer. There were no facts that indicated that the Petty Officer was intoxicated. The
decision in *Concepcion* was based solely on the Petty Officer's decision to give another service

27  member a ride while he was off-duty. The Second Circuit's decision in *Taber* is unrelated to the
facts in this case.

28

member as a personal favor and that at the time of the accident, Petty Officer Monroe "was not acting within his scope employment as an employee of the United States or in line of duty as a member of the United States Navy" *Id.*

In the case of *Clamor v. United States*, 240 F.3d 1215 (9th Cir. 2001), the district court found that a civilian employee of the Navy temporarily assigned to work on a ship in Pearl Harbor Naval Base was not within his scope of employment when an accident occurred while he was driving from work to his lodging. *Id.* at 1216. The rental car was provided by the Navy as was the lodging. *Id.* The accident occurred on the naval base. *Id.* The court held that the government derived no benefit from his activities after he stopped working on the ship. *Id.* at 1217. He was not within the scope of his employment while driving from work to his temporary home. *Id.*

Even more recently, the Ninth Circuit decided *Nationwide Mutual Insurance Co. v. Liberatore*, 408 F.3d 1158 (9th Cir. 2005), where the central issue was whether Liberatore, a Command Master Chief of the U.S. Navy, was acting in the line of duty when he got into an auto accident while on travel orders. Although Liberatore was on travel orders, the orders implicitly contemplated periods of liberty where he would be free to do as he pleased. *Id.* at 1160. While on liberty, Liberatore and a friend drove to State Line, Nevada, to gamble and spend the night. *Id.* During the first hour of the trip, Liberatore and his friend shared a twelve-pack of beer in the car. *Id.* Liberatore rear-ended a large truck and severely injured his passenger. *Id.* The Ninth Circuit noted several cases that held that the United States is not liable for a service person's auto accident while traveling when the service person was free from any obligation to his employer and the alleged negligent act was not part of his duties. *Id.* at 1163-64. Ultimately, the Ninth Circuit found that "Liberatore's relevant personal conduct was not so foreseeable by his employer that his employer could fairly be held liable for damages resulting from an accident caused by that conduct." *Id.* at 1164. Accordingly, the court held that the plaintiff's claim failed on its merits "[b]ecause Liberatore was not acting within the scope of his employment [and] the United States is not liable for the damages caused by his negligence." *Id.* at 1165.

1    The Plaintiffs maintain that Petty Officer McCoy was a sailor 24 hours a day, as such he
2    was "on call" seven days a week, 365 days in the year.  *See* Docket No. 33, Exh. C, McNeel
3    Depo., p.19:13-16.  Like all sailors, he was required to leave a number where he could be
4    reached, even when on leave.  *Id*., p. 68:24-69:4.   He was also subject to the Uniform Code of
5    Military Justice, the criminal law by which soldiers and sailors are governed by, at all times.  *Id.,*
6    p.20:6-10.

7    Most military personnel are paid on a 24-hour basis and are technically "on call" at all
8    times. The fact that Petty Officer McCoy is active duty in the U.S. Navy should not enlarge the
9    scope of employment beyond that which would accompany ordinary civilian life.  The Ninth
10   Circuit has stated that the proper means of analyzing torts involving military personnel is to strip
11   the case of "its military overtones, such as, that [the serviceman] during his leave was subject to
12   call to duty, and subject to the provisions of the Uniform Code of Military Justice and other
13   applicable service regulations."  *McCall v. United States*, 338 F.2d 589, 593 (9th Cir. 1964).

14   In civilian life, most jobs with any responsibility attached require that an employer know
15   how to get in touch with his employee should an emergency arise.  In fact, with the widespread
16   use of cell phones and communication devices (*e.g.* Blackberrys), employers can now be in
17   "constant contact" with their employees.  It would be grossly unfair to hold an employer liable
18   for all actions of his employees while they were off duty and on personal errands, even if they
19   were subject to call, unless of course they were called or were performing a specific service for
20   their employer while on call.  *See Le Elder*, 26 Cal. Rptr. 2d 749, 753 (Ct. App. 1994) ("Public
21   policy would be ill-served by a rule establishing 24-hour employer liability for on-call
22   employees, regardless of the nature of the employee's activities at the time of the accident.").

23   The court in *Wilson v. United States*, 315 F. Supp. 1197 (E.D. Pa. 1970) held that the
24   United States was not liable when an Army private who was "on call" 24 hours a day had an
25   accident on his way to report for work. In disposing of the "on call" 24 hours a day argument,
26   the court held:

27        The Court rejects this argument; to do otherwise would be tantamount to
         imposing liability on the Government every time a serviceman committed a
28

negligent act which resulted in an injury. This would, of course, greatly expand the Government's liability under the Federal Tort Claims Act in spite of the long-established proposition that the Act was designed to impose liability only under circumstances where a private person would be liable.

*Id.* at1199-1200.

Additionally, the Ninth Circuit has determined: "[T]he unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment." *Hartzell v. United States*, 786 F.2d 964, 969 (9th Cir. 1986) (quoting *Bissel v. McElligott*, 369 F.2d 115, 119 (5th Cir. 1966)) (Air Force driver traveling to new assignment was not acting within the scope of her employment). Relying on *Hartzell*, and rejecting the same type of arguments now advocated by the Plaintiffs in the instant case, the district court in Texas found that, "[t]o abide by Plaintiffs' reasoning in the present case would render the Government liable for virtually all negligent acts committed by any service member who was on liberty, making the Government a veritable global insurer of all military personnel." *Weaver v. U.S. Coast Guard*, 857 F. Supp. 539, 545 (S.D. Texas 1994) (holding that a Coast Guard driver was not acting within scope of employment when returning to ship from four-hour liberty).

As noted, participation in any activity offered by the MWR was strictly voluntary. Petty Officer McCoy was not expected or required to participate in MWR activities as part of his job duties. When the accident occurred, Petty Officer McCoy's work day had ended and he was off duty. There was no requirement for Petty Officer McCoy to furnish a vehicle for his job. Travel to the gym in his privately owned vehicle was not part of his duties. He was neither paid for the commute nor reimbursed for commuting expenses. The Navy was "not involved" with how he got to the gym. To the extent that the Navy may have had some say in his driving while on the military base, for example by requiring a driver's license and proof of insurance, it did not direct or require Petty Officer McCoy to drive on base.

It is true that recreational activities offered to sailors are a benefit to the Navy in so far as these activities keeps sailors presumably engaged in activities other than drinking, but this does not mean that participation was a requirement or incidental to a sailor's duties. As noted, the

MWR Program sponsors a number of activities (*e.g.* bowling, learning how to play the guitar, playing video games, going to movies, going out to dinner, yoga classes) that Petty Officer McCoy could have chosen to pursue. Some of the sponsored activities are physically demanding, while others are more relaxing, and/or mentally challenging. Yet all of the activities could be said to contribute to the morale and welfare, and therefore the readiness of the sailor.

If the court accepts the Plaintiffs' theory it would create all kinds of havoc for employers. It would result in employers being unable to encourage any type of recreational activity for fear of extending their liability. The Navy would likely stop the MWR Program if the Navy's vicarious liability was expanded to cover any accident that occurred during a sailor's travel to a sponsored recreational activity.

**A. Special Errand Exception Does Not Apply**

"An offshoot of the doctrine of respondeat superior is the so-called going and coming rule." *Jeewarat v. Warner Bros. Entertainment, Inc.*, 98 Cal. Rptr. 3d 837, 844 (Ct. App. 2009) (quotation marks omitted). Under this rule, an employee is generally not regarded as acting within the scope of his employment while going or coming from his place of work. *Ducey v. Argo Sales Co.*, 25 Cal.3d 707, 722 (1970). "This is based on the concept that the employment relationship is suspended from the time the employee leaves work until he returns, since the employee is not ordinarily rendering services to the employer while traveling." *Baptist v. Robinson*, 49 Cal. Rptr. 3d 153, 160 (Ct. App. 2006)).

However, there are exceptions to the "going and coming" rule. If the employee's trip is made at the request of his employer or "involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force," the employee is considered to be acting within the scope of his employment from the time that he starts on the "special errand" until he has returned or deviated therefrom for personal reasons. *Jeewarat*, , 98 Cal. Rptr. 3d at 844. If an employee is engaged in a "'special errand' or a 'special mission' for the employer it will negate the 'going and coming rule.'" *Id.*

The Plaintiffs ask this court to find that Petty Officer McCoy was on a "special errand"

on behalf of the Navy at the time he was driving to basketball practice. The Plaintiffs contend that Petty Officer McCoy was within the scope of his employment because at the time of the accident, he was engaged in a "special errand."

Plaintiffs rely on *Boynton v. McKales*, 139 Cal. App. 2d 777 (Dist. Ct. App. 1956) for support. In *Boynton*, the California District Court of Appeal set forth the following about the special errand doctrine.

> If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. (citations omitted). To such special missions the general test as to scope of employment applies. It is not necessary that the servant is directly engaged in the duties which he was employed to perform, but included are also missions which incidentally or indirectly contribute to the service, incidentally or indirectly benefit the employer.

*Id.* at 789 (citations omitted).

Such special errands have included "picking up or returning tools used on the job, attendance at an employment social function when an employee's attendance is expected and it benefits the employer, or a trip in which the employee responds to a service call when the employee is on call for the employer's business." *Caldwell v. A.R.B., Inc.*, 222 Cal. Rptr. 494, 499 (Ct. App. 1986).

The Plaintiffs argue that *Boynton* is applicable to the facts of this case. Petty Officer McCoy was not simply returning home from his work place; he was undertaking a special errand. He was going to participate in a Navy MWR Program at the Navy's gym on the Navy's base. His participation was at the request of the Navy (it preached to him daily about participating in the MWR Program). The Navy encouraged maximum participation by its sailors in the MWR Program and its subsidiary programs, in accordance with the mission and objectives it set forth in its regulations and the resources (mandatory commander or commanding officer involvement) and funding it devoted to the Program. Additionally, the Plaintiffs point out that Petty Officer McCoy was required to be physically and mentally fit in order to be ready to effectively perform duties in the Navy to defend the Nation, especially in combat. The

1 Plaintiffs claim that participation in the MWR Program clearly substantially and directly

2 benefitted the service for which he was employed.

3 The facts of the present case are dissimilar to those of *Boynton*. In *Boynton*, the

4 employer had a work banquet where the employee was given an award for his job performance

5 and then served alcohol. 139 Cal. App. 2d at 790-91. Employees were expected to attend the

6 banquet. *Id.* at 791. Driving away from the banquet, defendant Brooks, an employee, hit a 20-

7 year-old in the street and was charged with bodily injury while under the influence of liquor. *Id.*

8 at 780. The court focused on the possibility of a jury finding that the banquet was the equivalent

9 to the job at work, with recognition for the job performed and incentives to continue doing good

10 work on the job– that the banquet was an "official company function" that served to benefit the

11 employer. *Id.* at 791.

12 In the instant case, playing basketball was not mandatory for Petty Officer McCoy's job.

13 He was not being rewarded for his job performance. Basketball did not contribute to, nor cause,

14 this accident. The playing of basketball when off duty, would be more analogous to the

15 recreational company picnic in *Robbins v. Hewlett-Packard Corp.*, 103 Cal. Rptr. 184 (1972). In

16 *Robbins,* the court explored the special errand exception and found that an employee attending

17 his employer's sponsored picnic was not on a special errand.

18 We observe that, although there is substantial evidence that the picnic
**contributed to the morale** of Hewlett-Packard's employees and that Hewlett-
19 Packard understood that Cowan would be present at the beanbag stand for one
hour, plaintiffs do not urge that any of the court's other findings of fact are
20 without support in the record. Thus, the court found, on un-contradicted evidence,
that the vehicle driven by Cowan at the time of the accident was **owned**
21 **exclusively by him** and was not being driven with the permission or consent of
Hewlett-Packard; that the attendance of Cowan at the picnic was **not required** by
22 Hewlett-Packard or his immediate supervisor; that Cowan's immediate
supervisors did not attend the picnic; that the picnic was not held on a regular
23 working day, but on a Saturday; that **no compensation** was paid to Cowan or any
other person for his or her attendance at the picnic; that Cowan's attendance at the
24 picnic was **not considered in evaluating him** for salary increases, employment
promotions, work or performance evaluations, or job security; and that although
25 Cowan was an employee of Hewlett-Packard, he was not, at the time of the
accident, acting within the scope and course of his employment with Hewlett-
26 Packard, and was not on a special errand for Hewlett-Packard.

27 *Robbins*, 103 Cal. Rptr. at 187 (emphasis added).

28

Similarly here, Petty Officer McCoy's employer – the U.S. Navy – was supportive of basketball and other recreational activities, but the activity Petty Officer McCoy chose to do (or not do) on his off duty time, was a decision left to Petty Officer McCoy to make.

The Plaintiffs argue that the *Robbins* court used the incorrect California law and therefore is inapposite to this case. In *Robbins*, the Court of Appeals found that for purposes of finding an employer liable under the respondeat superior theory, the benefit to the employer of the activity involved must be material as opposed to incidental. The Plaintiffs claim that that analysis was incorrect. When *Robbins* was decided, the correct test or analysis at the time was the incidental benefit test or analysis as held in the *Hinman v. Westinghouse Electric Co.*, 88 Cal. Rptr. 188 (1970). In discussing the exception to the "going and coming" rule in a respondeat superior case, the California Supreme Court held that exceptions to the going and coming rule will be made where "the trip involves incidental benefit to the employer, not common to commute trips by ordinary members of the work force." *Id.* at 962.

Plaintiffs argue that if the *Hinman* standard is applied, it is clear that the Government derived an incidental benefit from Petty Officer McCoy's participation in the MWR Program activity– practicing basketball at the Navy's gym. However, the facts of *Hinman* are different to those in this case. In *Hinman,* the employee traveled from his home to a job site and then after work returned home from the job site. *Hinman,*88 Cal. Rptr. 189. The employer, Westinghouse, paid its employee for his round-trip travel time between his home and the job site and paid travel expenses. *Id.* The California Supreme Court stated:

> There is a substantial benefit to an employer in one area to be permitted to reach out to a labor market in another area or to enlarge the available labor market by providing travel expenses and payment for travel time . . .
>
> We are satisfied that, where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable.

*Id.* at 192.

The Plaintiffs claim that the holding in *Hinman* was further explained in the California

1  Supreme Court in *Farmers Insurance Group v. County of Santa Clara*, 47 Cal. Rptr. 2d 478

2  (1995). *Farmers* involved a Deputy Sheriff who committed egregious sexual harassment. The

3  question was whether the employer, under respondeat superior, was responsible to pay for the

4  legal defense of his offending employee. *Id.* at 997. The court explained that vicarious liability

5  of an employer is proper where the risk arises out of the employment. The court stated:

6  In *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962 [227 Cal.Rptr. 106,
   719 P.2d 676] ( *Perez* ), we explained scope of employment principles under the
7  respondeat superior doctrine as follows: "[A]n employer is liable for risks 'arising
   out of the employment.' [Citations.] [¶] A risk arises out of the employment when
8  ' in the context of the particular enterprise an employee's conduct is not so
   unusual or startling that it would seem unfair to include the loss resulting from it
9  among other costs of the employer's business. [Citations.] In other words, where
   the question is one of vicarious liability, the inquiry should be whether the risk
10  was one "that may fairly be regarded as typical of or broadly incidental" to the
   enterprise undertaken by the employer. [Citation.]' [Citation.] Accordingly, the
11  employer's liability extends beyond his actual or possible control of the employee
   to include risks inherent in or created by the enterprise." ( *Perez, supra*, 41 Cal.3d
12  at p. 968, italics added [employer vicariously liable for injuries sustained by
   plaintiff when he was knocked from a tractor driven by employee while disking
13  employer's orchard].) These principles were reiterated in Mary M., *supra*, 54
   Cal.3d at page 209.

14
15  As the Court of Appeal elaborated in *Rodgers v. Kemper Constr. Co.* (1975) 50
   Cal. App.3d 608, 618-619 [124 Cal.Rptr. 143] ( Rodgers ): "One  way to
16  determine whether a risk is inherent in, or created by, an enterprise is to ask
   whether the actual occurrence was a generally foreseeable consequence of the
17  activity. However, 'foreseeability' in this context must be distinguished from
   'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a
18  level of probability which would lead a prudent person to take effective
   precautions whereas 'foreseeability' as a test for respondeat superior merely means
19  that in the context of the particular enterprise an employee's conduct is not so
   unusual or startling that it would seem unfair to include the loss resulting from it
20  among other costs of the employer's business. [Citations.]" (Italics added.) We
   find the *Rodgers* foreseeability test useful because it reflects the central
21  justification for respondeat superior: that losses fairly attributable to an
   enterprise-those which foreseeably result from the conduct of the
22  enterprise-should be allocated to the enterprise as a cost of doing business. (*John
   R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 450 [256 Cal.Rptr. 766,
23  769 P.2d 948] ( *John R.* ); Hinman v. Westinghouse Elec. Co. (1970) 2 Cal.3d
   956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988].)

24  *Id.* at 486.

25  The *Farmers* court discussed at length the attribution of vicarious liability to an employer

26  where the involved misconduct arises in the employment context. However, it found under the

27  facts that the sexual harassment was not within the scope of employment and the employer was

28

not obligated to indemnify his defense. *Id.* at 499.

It is important to recognize that the facts of *Hinman* and *Farmers* are different from those in the instant case. Unlike the situation found in *Hinman,* Petty Officer McCoy was off duty and free to do whatever he wanted to. There was no agreement that he would be compensated for the time spent traveling to and from the ship to the gym, or that he would be reimbursed for travel expenses.

Likewise, the *Farmers* case is distinguishable from the instant case. The driver in the instant case, Petty Officer McCoy, was off duty and heading to go play some basketball. He was not acting on behalf of his employer, the Navy, and he was not traveling pursuant to specific orders when the accident occurred. The Navy had no right to control or direct Petty Officer McCoy as to the route or the mode of transportation. He could have gone by bicycle, motorcycle or walked. He could have started his travel only to abandon it and his employer, the Navy, would have had no right to direct him to do otherwise. It would be unfair to hold the Navy liable for damages resulting from an accident caused by a sailor while traveling in his own vehicle, on his own time. Petty Officer McCoy's negligence in operating his car on the way to play basketball is simply not foreseeable so as to result in the Navy's liability under Guam law.

### B. Worker's Compensation cases are not controlling.

The Plaintiffs also suggest that when considering whether Petty Officer McCoy was acting in the scope of his employment, the court should look to cases dealing with workers' compensation matters. Plaintiffs cite to the case of *Rodgers v. Kemper Constr. Co*[7]., 124 Cal.

---

[7] The *Rodgers* case involved a group of employees of a subcontractor who severely beat the employees of a contractor, after drinking in the construction site trailer. The *Rodgers* court was careful to disclaim too broad an interpretation of an employer's liability for the actions of its employee. The court was careful to state that the facts before it were unusual, saying, "this does not mean that *respondeat superior* is merely a justification for reaching a "deep pocket" or that it is based only upon an elaborate economic theory regarding optimal resource allocation." *Rodgers*, 50 Cal. App. 3d at 618. The application there was for an employer that had its construction crew routinely drinking in its site trailer, which foreseeably led to injuries. The court found that a work-related dispute was the "proximate cause" of the attack. There is no applicability to this case where the employee is simply driving his car after work. The Government argues that *Rodgers* should not be construed as authority for stretching respondeat superior to coverage of an off duty employee who

Rptr. 143 (Ct. App. 1975), for that proposition. In *Rodgers*, the court stated:

> Under the modern rationale for Respondeat superior, the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment. (*Hinman v. Westinghouse Elec*. Co., *supra*, 2 Cal.3d 956, 962, fn. 3, 88 Cal.Rptr. 188, 471 P.2d 988.) This must necessarily be so because the theoretical basis for placing the loss on the employer in both the tort and workers' compensation fields is the allocation of the economic cost of an injury resulting from a risk incident to the enterprise. (*Huntsinger v. Glass Containers Corp*., 22 Cal.App.3d 803, 808, 99 Cal.Rptr. 666; 2 Harper & James, The Law of Torts, pp. 1376-1378.) Consequently, our high court has on many occasions relied upon workers' compensation cases in tort cases. (E.g., *Hinman v. Westinghouse Elec. Co.*, *supra*, 2 Cal.3d at 961-962, 88 Cal.Rptr. 188, 471 P.2d 988; *George v. Bekins Van & Storage Co.*, 33 Cal.2d 834, 843, 205 P.2d 1037; *Fields v. Sanders, supra*, 29 Cal.2d 834, 841, 180 P.2d 684; *Carr v. Wm. C. Crowell Co., supra*, 28 Cal.2d 652, 656, 171 P.2d 5.)

*Id.* at 149.

Relying upon *Rodgers,* the Plaintiffs ask this court to consider the workers' compensation cases of *California Casualty Indemnity Exchange v. Industrial Accident Commission*, 21 Cal. App. 2d 751 (1943) and *Bethlehem Steel Co. v. Industrial Accident Commission*, 70 Cal. App. 2d 382 (Dist. Ct. App. 1945) in deciding this case. To the extent that the reasoning of these cases is persuasive, the court may rely upon them. The Plaintiffs point out that in *California Casualty*, the California Supreme Court held, as an exception to the "going to and coming from rule," that "[i]njuries sustained by an employee while going to and from his place of work on premises owned and controlled by his employer are generally deemed to have arisen in the course of the employment." 21 Cal. App. 2d at 757.

The facts in *California Casualty* are unrelated to the instant case. There, an employee was allowed to complete personal errands during her work day without any deduction being made in her salary. 21 Cal. App. 2d at 753. She routinely parked in an employer controlled driveway that was adjacent to the workplace entrance. *Id.* After returning from running an errand on work time, the employee stepped from her car and into the workplace entrance. *Id.* She then somehow caught her heel, fell, and was injured. *Id.* at 754. It was found to be an on

has an accident in his private vehicle.

the job injury and she was given workman's compensation.

The facts in *Bethlehem Steel* are also distinguishable from those in this case. In *Bethlehem Steel*, an employee tripped and fell on a cement walk, after he had checked out from work. 70 Cal. App. 2d at 384. The employee was found to have been injured during the course of his employment. The court found that although the employee had checked out of work, the particular act he was engaged in at the time was in furtherance of the employer's operations. *Id.* at 388.

It is clear that the "scope of employment" for purposes of an employee being covered when injured on the job and the "scope of employment" for purposes of vicarious liability on the part of an employer to third parties are significantly different. And for good reason. The policy behind workers' compensation is to help the employee who was injured while "on duty," whereas the policy behind respondent superior is to allocate liability to an employer for the torts committed by his employees to third parties. *See Hinman*, 88 Cal. Rptr. at 190 (stating that "the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business.").

This court is not persuaded that in determining whether Petty Officer McCoy was acting in the "scope of employment" it should look to workers' compensation cases. In fact, neither of the workers' compensation cases cited by the Plaintiffs are persuasive given the circumstances of this case. "[A]lthough worker's compensation cases can be helpful in determining the employer's vicarious liability for its employee's torts, they are not controlling precedent when liability is predicated upon respondeat superior principles." *Perez v. Van Groningen & Sons, Inc.*, 227 Cal.Rptr. at 108 n.2 (citations and quotation marks omitted). The *Munyon* court reasoned that:

> Worker's compensation cases can be helpful in determining vicarious liability of
> the employer for torts of the employee, but they are not controlling.
>
> . . .

Thus we conclude that the cases cited by the plaintiffs interpreting the words "arising out of and occurring in the course of employment" for the purpose of determining liability under the workers' compensation laws, although helpful for some reference purposes, are not determinative in the interpretation of the words 'acting within the scope of employment' under the doctrine of respondeat superior. [S]cope of employment defines a more restricted area of employee conduct than the customary phrase "arising out of and in the course of employment." An employee can suffer an injury that is compensable under workers' compensation laws and at the same time not be within the scope of employment under the doctrine of respondeat superior.

*Id.* at 427 (citations omitted).

In its determination of the issue, this court finds it is appropriate to rely more on the cases that are directly on point, such as *Concepcion*, 374 F. Supp. 1391; *Clamor*, 240 F.3d 1215, and *Liberatore*, 408 F.3d 1158.

In sum, the record does not appear to demonstrate that at the time of the accident, Petty Officer McCoy was acting in the scope of his employment. This result is consistent with Ninth Circuit case law applying state law in similar FTCA situations involving military members. *See e.g.*, *Liberatore,* 408 F.3d at 1163-64 (finding, under California law, that Navy member was not in scope of employment while driving during temporary duty but while on leave and not furthering his employer's purpose); *Clamor*, 240 F.3d at 1217 ("The United States derived no benefit from [employee's] activities once he stopped working on the U.S.S. Los Angeles and left for the day, any more than it does when any other employee departs for the evening.") (Hawaii law); *Hartzell*, 786 F.2d at 967-69 (holding Air Force member not in scope of employment while driving, even if travel to duty station was in some part intended to serve the Air Force) (Arizona law); *Davies v. United States*, 542 F.2d 1361, 1364 (9th Cir. 1976) (finding military officer not in scope of employment while driving to base to retrieve a document to work at home; no exception to general rule that commuting to or from work is outside scope of employment) (Washington law).

This court sees no reason to depart from the standard set by the Ninth Circuit. The FTCA is clear that sovereign immunity is waived only "under circumstances where the United States, if a private person, would be liable." 28 U.S.C. 1346(b). A private employer does not have the military's right to exercise complete authority over its employees at all times. If the court were

to adopt the Plaintiffs' rationale for finding liability in this case, the United States would be liable for virtually any tort committed by a serviceman, whether he was on-duty, off-duty, or on leave at the time of the incident. Such a result would impose upon the military a liability far broader than that of a private employer, contrary to the limited waiver intended by the FTCA. *Lutz*, 685 F.2d at 1183.

### V. CONCLUSION

The court finds that in applying the law as the Territory of Guam would do, and in interpreting public policy as the Territory of Guam would do, that at the time of the accident in question, Petty Officer McCoy was not acting in the course and scope of his employment, was not going about the business of his employer, and was not therefore acting in the line of duty. From the facts of this case, a sailor who is off duty, traveling in his own personal vehicle is not in the line of duty for purposes of the FTCA. An injured party suing under the FTCA cannot create a "cause of action based on a military relationship where the liability would not lie under state law." *Louie v. United States*, 776 F.2d 819, 826 (9th Cir. 1985).

Therefore, after applying summary judgment standards, it is hereby ordered that the United States' Motion To Dismiss (Docket No. 30) is **GRANTED** and the Plaintiffs Motion for Partial Summary Judgment is **DENIED** (Docket No. 42).[8]

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Jun 03, 2010

---

[8] As noted previously, this court applied summary judgment standards to the Government's motion and reviewed the Plaintiffs' pleadings as in opposition to that motion. However, if procedurally this court considered the Plaintiffs' Motion for Summary Judgment independent of the Government's motion, the court would still deny the relief sought by the Plaintiffs, consistent with the court's findings herein.